UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>MARQUAN M. COX,<br>Defendant. | Case No. 24-20560<br>Honorable Shalina D. Kumar |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE DUE TO PRE-INDICTMENT DELAY (ECF NO. 21)**

## I. Introduction

Defendant Maquan Cox ("Cox") is charged[1] with three (3) counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) & (e). ECF No. 14. Cox moved to dismiss this indictment with prejudice due to pre-

[1] A grand jury first returned an indictment on October 3, 2024, charging Cox with three counts of sexual exploitation of a minor. ECF No. 14. A First Superseding Indictment was filed on January 28, 2026, charging Cox with seven counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) & (e)., two counts of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 35. Because Cox's motion to dismiss for preindictment delay was filed prior to the grand jury returning a First Superseding Indictment, the Court will treat the original indictment as the operative one to comport with the parties' briefing.

indictment delay. ECF No. 21. The motion was fully briefed, ECF Nos. 25, 26, and the Court heard oral argument on May 19, 2026. On July 22, 2026, the Court ordered the parties to file supplemental briefing on Cox's request for an evidentiary hearing. ECF No. 58. The supplemental briefs have been filed, ECF Nos. 59, 63, and this matter is now ripe for determination. For the following reasons, the Court denies Cox's motion.

## II. Background

In 2021, the Genesee County Sheriff's Office ("GCSO") received information that Cox had communicated with and sexually exploited minors. ECF No. 1. In October of that year, a 14-year-old girl ("MV1") reported meeting Cox and Jane Doe online earlier in 2021. *Id.* Cox was 20 years old at the time they met, however, he told MV1 that he was 17. ECF No. 25. MV1 reported that Cox and Doe had persuaded MV1 to send Doe pictures of MV1's genitalia. *Id.* MV1 complied. Doe and MV1 continued their online communication, and Doe demanded MV1 go to Cox's house if she wanted the explicit pictures deleted. *Id.* After MV1 refused, Cox sent the photographs of MV1 to MV1's family members via Facebook Messenger and threatened to "shoot up" her house. *Id.*

During GSCO's investigation, another minor victim ("MV2"), also 14 years old, came forward and reported that she met Cox and Doe on the internet in or around August and September of 2021. Like MV1, MV2 was coerced into sending nude photographs to Doe. *Id.* Doe then threatened to send MV2's nude pictures to her family unless she performed oral sex on Cox and allowed Cox to have anal sex with her. *Id.* MV2 was then told if she came back to Cox's house, the explicit photos would be deleted. *Id.* MV2 reported that she did go to Cox's house again and was subsequently raped by him. *Id.*; *see also* ECF No. 1, PageID.4.

On November 4, 2021, after obtaining and executing multiple search warrants, GCSO arrested Cox and Doe on state sexual assault charges. ECF No. 25. During an interview, Cox admitted to sending sexually explicit pictures of MV1 to her relatives on Facebook and admitted to engaging in oral sex with MV2. *Id.* Doe admitted to telling MV2 that she needed to go to Cox's house in order to get her pictures deleted, and Doe confessed to taking video of Cox engaging in sexual activities with MV2. *Id.*

"Cox was charged in the 67th District Court in Flint, Michigan on November 6, 2021, with 31 counts, including first-degree criminal sexual conduct, extortion, child sexually abusive activity, use of a computer,

delivery of a controlled substance to a minor, kidnapping, and felony firearms." *Id.* at PageID.88. On June 30, 2022, Cox was bound over to the 7th Circuit Court in Genesee County on 28 of those counts. *Id.*

Following Cox's arrest, GSCO discovered "additional alleged teenaged victims of Cox, as well as other potential victims" who were under the age of 5 years old. *Id.* at PageID.89. The government met with the Genesee County Prosecutor's Office ("GCPO") in or around June 2022 regarding potential federal offenses arising out of Cox's alleged conduct, and a witness was interviewed by the FBI. *Id.* The government conferred with the GCPO again in the beginning of 2023 and made the decision to defer charging Cox at the federal level in favor of the state's continued prosecution. *Id.*

In or around April 2024, the GCPO contacted the government with the status of its state investigation of Cox. After taking "additional investigative steps," the government obtained a federal criminal complaint against Cox in August 2024. *Id.* at PageID.90.; *see also* ECF No. 1. He appeared before the magistrate judge on August 20, 2024, and consented to detention. ECF No. 10. On October 3, 2024, a grand jury returned an

indictment against Cox, and he was arraigned on October 22, 2024. ECF No. 11.

Cox now moves to dismiss the indictment arguing he has suffered a substantial delay of his right to a speedy trial which has violated his right to due process, and alleges the delay was an intentional act by the government to obtain a "tactical advantage." ECF No. 21. The government argues that the indictment was timely under the applicable statute of limitations and the length of time between Cox's offense conduct and his indictment did not violate his due process rights. ECF No. 25. The government further asserts that Cox has failed to show that the length of time prior to his indictment "caused substantial prejudice to his right to a fair trial" or "was an intentional device by the government to gain a tactical advantage." *Id.*

## III. Analysis

The Due Process clause of the Fifth Amendment protects against oppressive pre-indictment delay. *United States v. Marion*, 404 U.S. 307, 324–25 (1971); *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Schaffer*, 586 F.3d 414, 424, (6th Cir. 2009). However, in the Sixth Circuit, "dismissal for pre-indictment delay 'is warranted only when

the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage.' " *Schaffer*, 586 F.3d at 424 (quoting *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984)). Notably, " 'the acceptability of a pre-indictment delay is generally measured by the applicable statute of limitations.' " *Schaffer*, 586 F.3d at 425 (quoting *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986), *cert. denied*, 479 U.S. 1067 (1987), and citing *Lovasco*, 431 U.S. at 789). This is because statutes of limitations act as "predictable, legislatively enacted limits on prosecutorial delay" that form the primary bulwark against "overly stale criminal charges." *Lovasco*, 431 U.S. at 789.

"A successful Due Process claim for pre-indictment delay requires that a defendant establish: (1) prejudice to his right to a fair trial, and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003). "[I]n evaluating whether a defendant has satisfied the second 'intentional-delay' prong, '[i]t is well-established that a delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time.' "

*United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017) (second and third alterations in original) (quoting *United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997)). "Both elements" impose a heavy burden on the defendant, as courts recognize that he "who moves to have his indictment dismissed for pre-indictment delay faces an uphill battle." *Id*.

**A. Prejudice**

Cox cannot establish either prong of the Sixth Circuit's test for unconstitutional pre-indictment delay. The parties do not dispute that the government charged Cox within the applicable statute of limitations. Instead, Cox argues that even though his charges were considered timely under the statute of limitations, the delay was long enough that his right to a fair trial has been violated. ECF No. 21. He asserts that "memories fade, witnesses pass away, and defenses wither on the vine. In fact, . . . witnesses who were critical to Mr. Cox's case passed away or have gone missing. *Id.* at PageID.69. Critically, Cox claims his brother, Antquan Cox, who was tragically killed in a shooting that occurred in March 2023, would have had relevant testimony regarding telephone calls that contradict allegations made against him, and the ages of the victims and their credibility, which he avers could have been exculpatory because Antquan

occupied the room next to Cox in the basement of the home where they both lived. *Id.* at PageID.69–70; ECF No. 26, PageID.110. However, as the government correctly notes, "Cox provides no indication of what the actual substance of Antquan's testimony would have been, what phone calls were being referred to or what their contents were, or whether any such evidence might be available through other means, as required to support a claim of substantial prejudice." ECF No. 25, PageID.97.

The Sixth Circuit has explained that the prejudice suffered by the defendant must be "substantial" *Schaffer*, 586 F.3d at 424, and the prejudice Cox purports to have suffered fails to meet this standard. First, Cox has not shown that the death of Antquan prejudices his defense. As the Sixth Circuit explained in *Rogers*:

> Several circuits have held that the death of a potentially material witness during an undue pre-indictment delay may prove prejudice, but that it is not alone determinative. *E.g., United States v. Valona*, 834 F.2d 1334, 1338 (7th Cir.1987) (holding that "the death of a witness alone is insufficient to establish actual prejudice") (citing cases); *United States v. Beszborn*, 21 F.3d 62, 66–67 (5th Cir. 1994) (holding that the death of five potentially material witnesses did not prove actual prejudice because the defendant did not show that the testimony of any of the witnesses would have been exculpatory or would have actually aided the defense), *cert. denied*, 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 288 (1994). The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost

> and could not be obtained through other means. *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir.1984). *However, a defendant does not show actual prejudice based on the death of a potential witness if he has not given an indication of what the witness's testimony would have been and whether the substance of the testimony was otherwise available*. *Id*.

*Rogers*, 118 F.3d at 475 (emphasis added).

Here, although Cox provides generalizations regarding what his brother may have testified to, he has not explained how that testimony would exculpate him in this case. *United States v. Norris*, 501 F. Supp. 2d 1092, 1097 (S.D. Ohio 2007). Furthermore, the government asserts that when Antquan was interviewed by law enforcement on two separate occasions, he denied having "any substantive knowledge of the offense conduct, apart from having been contacted by MV-1 about being raped." ECF No. 25, PageID.97. And there are no allegations that Antquan contacted law enforcement on his own, prior to his death, to provide exculpatory information. *Id.* Other than the fact that Antquan shared a living space with him, Cox has not articulated any reason as to why interviewing or cross-examining Antquan would be helpful to his defense.

Furthermore, Cox's assertion that "memories fade" is equally unavailing. The Sixth Circuit has made clear that "loss of memory is an insufficient reason to establish prejudice." *Wright*, 343 F.3d at 860; *see also*

*United States v. Miller*, 1996 WL 426135, at *1 (6th Cir. July 29, 1996) ("[D]imming memory alone is insufficient to establish prejudice."). Like the death of his brother, Cox has made no effort to explain who would be providing testimony, what the testimony might be, how the testimony might be exculpatory, or whether it could be obtained from other sources. Mere speculation about the fading memories of potential witnesses is not enough to establish substantial prejudice.

Next, Cox alleges that the delay resulted in the loss of exculpatory evidence like Ring camera video, surveillance videos, and phone recordings. ECF No. 21, PageID.70. But Cox has not offered "a 'nexus between the delay and the unavailability' of the evidence." *United States v. Shafer*, 384 F. Supp. 480, 482 (N.D. Ohio 1974) (quoting *United States v. Parish*, 468 F.2d 1129, 1133 (D.C. Cir. 1972)). Nor has he demonstrated "that the evidence lost would be both material and favorable to the defense[.]" *United States v. Vaughn*, 444 F. App'x 875, 879 (6th Cir. 2011).

Indeed, although he was not federally charged until 2024, he was charged with related felony sex offenses in the state court in 2021. "He thus had an ability, and presumably the motivation, to investigate the charges against him." *United States v. Taylor*, 2023 WL 3098653, at *6 (E.D. Mich.

Apr. 26, 2023). Cox has not explained why this evidence could not have been secured while his state charges were pending. A defendant's "bare assertions, without supporting evidence, are not sufficient to demonstrate [actual] prejudice." *United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) (citing *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982)). Without more, the Court finds he has not suffered substantial prejudice.

**B. Intentional Delay**

Even if the Court were to assume Cox made a showing of actual prejudice, his argument still fails because he has not offered any evidence that the government lacked a "valid reason for the delay or that some tactical advantage was sought to be obtained by the delay." *United States v. DeClue*, 899 F.2d 1465, 1468–69 (6th Cir. 1990) (citations omitted). Instead, Cox argues only that "[t]he government stuck its proverbial head in the sand and let state prosecutors engage in delay tactics that has (sic) now given federal prosecutors a tactical advantage." ECF No. 21, PageID.69. But it is Cox's "burden" to show the delay was intentional or unjustifiable, and a court may not "presume that the delay was for an improper purpose." *Schaffer*, 586 F.3d at 425–26. When a state prosecution against the defendant is active, the United States declining to

pursue its own prosecution does not amount to seeking a tactical advantage. *United States v. Stewart*, 426 F. Supp. 58, 60 (E.D. Mich. 1976); *see also Brown,* 959 F.2d at 67 ("[W]e see little value in a rule that would require dismissal of a federal indictment simply because a defendant earlier pleaded guilty to state charges involving the same underlying conduct."). Finally, courts may rely on representations made by the government in court filings regarding the reasons for the delay to determine whether the delay was valid. *United States v. Burks*, 316 F. Supp. 3d 1036, 1040–41 (M.D. Tenn. 2018) (citing *Rogers*, 118 F.3d at 476–77).

"[P]articularly where the delay is investigative rather than intended to gain a tactical advantage over the accused, preindictment delay does not offend the Fifth Amendment." *Brown*, 959 F.2d at 66 (citing *Lovasco*, 432 U.S. at 795). The government has asserted that although it "considered the potential for federal charges during the second half of 2022, [it] decided in early 2023 to defer in favor of allowing the state to continue to pursue its charges against Cox . . . ." ECF No. 25, PageID.100. If convicted on those charges, Cox faced a mandatory minimum of 25 years in prison up to life, with the possibility of consecutive sentences. "Such a result could then

have been considered for whether it obviated the need for federal prosecution." *Id.* at PageID.101.

"Mere allegations that the government's conduct was intentional, without more, are insufficient to support a claim of purposeful, intentional delay to gain a tactical advantage when the government has proffered investigatory reasons for the delay." *United States v. Toaz*, 59 F. App'x 94, 99 (6th Cir. 2003). And again, the indictment was brought well within the statute of limitations, which is sufficient to protect Cox from stale charges. *Lovasco*, 431 U.S. at 789.

Accordingly, the Court finds that the record does not support Cox's belief that the government acted in bad faith or that the delay was intentional rather than investigatory; Cox's due process claim fails.

**C. Evidentiary Hearing**

Finally, Cox seeks an evidentiary hearing to further develop the record to determine "whether the loss of Antquan Cox is relevant to the federal counts here (rather than to the state charges that preceded them); whether the federal delay affected [his] access to the recordings he has identified; and, whether the Court should hear from the state prosecutor who dismissed her case four days before trial." ECF No. 63, PageID.364.

The government argues Cox's claims do not warrant an evidentiary hearing. ECF No. 59. The Court agrees and finds such a hearing unnecessary given the vague and conclusory nature of Cox's arguments. *See United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016) (absent a prima facie showing that defendant was actually prejudiced by the delay and that the government acted purposefully, an evidentiary hearing on preindictment delay is not warranted); *United States v. Ledbetter*, 2015 WL 4751468, at *12 (S.D. Ohio) (finding hearing unnecessary "given the speculative and conclusory nature of Defendants' arguments"); s*ee also United States v. Labine*, 878 F.2d 382 (6th Cir. 1989) ("After his indictment, the defendant filed a motion to dismiss alleging pre-indictment delay. This motion was denied without an evidentiary hearing."); *Shafer*, 384 F. Supp. at 483 (denying evidentiary hearing where defendants failed to support their motion with specific allegations of prejudice). Cox "of course, may renew [his] motion 'if there is a sufficient showing of [substantial] prejudice at trial.' " *Ledbetter*, 2015 WL 4751468, at *12 (quoting *Shafer*, 384 F. Supp. at 483).

## IV. Conclusion

For all these reasons, the Court **DENIES** Cox's motion to dismiss the indictment and his request for an evidentiary hearing.

**IT IS SO ORDERED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: October 2, 2026